UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTH POINTE DEALINGS, INC.,

    Plaintiff,

v.

Case number 07-10298
Honorable Julian Abele Cook, Jr.

ARGO INTERNATIONAL INC.,
ROBERT VEKICH,

    Defendant.

## ORDER

In this civil action, the Plaintiff, North Pointe Dealings, Inc. ("North Pointe"), has charged the Defendants, Argo International, Inc. ("Argo") and its president, Robert Vekich, with breach of contract, as well as unlawful acts of statutory and common law conversion.

On February 28, 2007, the Defendants filed a motion, in which they have collectively argued that this case should be dismissed because the Court lacks *in personam* jurisdiction over them. For the reasons that have been set forth below, their motion must be denied in part and granted in part.

I.

North Pointe is a Michigan corporation that imports cement and exports it to Iraq. Argo is a Minnesota based international business consulting firm which acts as a consultant to businesses that are involved in international trade, and assists its clients in arranging contracts relating to urea (fertilizer), cement, rice, sugar, iron rods, and other products.

During the summer of 2006, North Pointe recruited Argo to find a cement supplier, facilitate a transaction, and arrange for the delivery of cement to the port of Um Qasr in Iraq. North Pointe

had discovered Argo through the Alibaba.com, internet website that allows prospective buyers and sellers of commodities to post business information.[1] The interaction between North Pointe and Argo began on July 28, 2006, when Mohammad Shukr, an agent of North Pointe in Michigan, called Robert Vekich, who had been listed on Alibaba.com website as the contact person for Argo. Vekich directed Shukr to contact Syed Jamaluddin, a representative of Argo in Paris, France. From that point on, representatives of North Pointe communicated primarily with Jamaluddin.

After North Pointe sent Jamaluddin a letter of its intent to purchase cement, Argo negotiated an agreement for its client to purchase of 12500 metric tons of cement from Century Cement Company Limited ("Century Cement"). This agreement, which was signed on August 31, 2006, required North Pointe to secure a letter of credit for 99% of the purchase price (i.e, $767,250). While North Pointe was attempting to secure a letter of credit from an American bank, Jamaluddin had repeatedly offered Argo's services in securing a European source of credit. When it failed to obtain a letter of credit from an American bank, North Pointe executed a "Service Agreement for Bank Instrument Arrangement" on September 28, 2006 which authorized Argo to arrange for a letter of credit in the amount of $767,250.00.

After the letter of credit had been obtained, North Pointe and Argo signed a "Memorandum of Understanding" on November 3, 2006. This "Memorandum of Understanding" contained a provision which required North Pointe to pay $767,250.00 to Argo to cover the letter of credit. In turn, Argo agreed to use these monies to pay Century Cement for the supplies. Argo also agreed to make all of the necessary arrangements for the handling of the cargo, its transportation to Iraq,

---

[1] By utilizing the Alibaba.com, website, sellers can post items for sale, and buyers can identify those products that they desire to purchase. At the top of its webpage, Alibaba.com proclaims that it is the "world's largest online import-export marketplace." However, this website does not facilitate the actual transactions. Rather, it provides contact information that will enable buyers and sellers to make direct contact each other.

and to settle all shipment costs. The parties' agreement also stipulated that, in the absence of unforeseeable circumstances, Argo would refund the $767,250.00 to North Pointe if the cement was not delivered to Century Cement by November 27, 2006. In addition, this "Memorandum of Understanding" required Argo to keep North Pointe advised of the progress of the transaction.

However, and subsequent to the execution of the "Memorandum of Understanding," the relationship between the parties soured. For instance, North Pointe claims that Argo provided it with misleading, false, and inaccurate reports during the month of November 2006 regarding the shipment of cement. In one of Jamaluddin's messages to Northpointe, he stated that Argo "shall do [its] best to win [North Pointe's] confidence and as such look forward to do long term business with your company. . . ." Declaration of Mohamad Shukr, exh. 38. Vekich met with representatives of North Pointe in Chicago, Illinois for the ostensible purpose of assuring North Pointe that its transaction with Century Cement was progressing smoothly.

Notwithstanding the representations that were made by and between the parties during this meeting, the shipment of cement was never delivered. On November 25, 2006, Argo issued a "Notice of Force Majeure," in which it claimed that the wartime conditions in Iraq had prevented its ability to deliver the cement, a situation which allegedly relieved it of any liability to Northpointe. Significantly, there is no evidence that Argo has returned any of the monies to Northpointe. When efforts to resolve this dispute failed, this lawsuit followed.

II.

Here, as in all cases, Northpointe, as the Plaintiff in this action, has the burden of demonstrating that this Court has *in personam* jurisdiction over both of the Defendants. *Third National Bank in Nashville v. Wedge Group, Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989), quoting *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). A federal court, sitting in a diversity action,

must apply the law of the state in which it sits to determine if personal jurisdiction exists over a nonresident party. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir. 1988). In order to make this determination, the Court must evaluate (1) the state rule or statute that potentially confers personal jurisdiction upon a nonresident defendant, and (2) if the application of those rules is consistent with the due process rights under our United States Constitution. *Unistrut Corp. Baldwin*, 815 F. Supp. 1025, 1027 (E.D. Mich. 1993). The non-moving party "need only to make a prima facie showing of personal jurisdiction." *CompuServe, Inc. v. Patterson* 89 F.3d 1257 (6th Cir. 1996). However, it is imperative that this Court ensure that an exercise of personal jurisdiction over an out-of-state defendant does not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In support of this pending motion to dismiss, the Defendants assert that their contacts with this state do not satisfy the Michigan "Long Arm" statute," as codified in Mich. Comp. Laws. §§ 600.701, 600.705, 600.715. Further, they advance the position that the exercise of personal jurisdiction by this Court would be inconsistent with the due process clause of the Constitution because neither of them have ever acquired the requisite "minimum contacts" with the forum state as required by International Shoe Co.

Moreover, Argo contends that it is not subject to the jurisdiction of this Court because it (1) is a Minnesota corporation which is not licensed to do business in Michigan, (2) does not own any real estate in Michigan, (3) has neither advertised nor solicited business within the state, and (4) does not have any Michigan employees or agents. Vekich, as the individual Defendant in this lawsuit, maintains that his involvement in this transaction was periphery and as such, he only acted in his official capacity as a representative of Argo. He points out that he has never (1) lived in Michigan,(2) traveled to Michigan during the periods of time in controversy, (3) owned any

property in Michigan, or (4) maintained any banking accounts in Michigan. He further asserts that his most significant involvement in this controversy occurred only after the transactions and the events which gave rise to this lawsuit had occurred.

III.

In its challenge to the arguments by Argo and Vekich , North Pointe maintains that the Court has personal jurisdiction over these two Defendants under any of three provisions of the Michigan "Long Arm" statute, which states that there is limited personal jurisdiction over those corporations and individuals who have (1) transacted any business within the state, under Mich. Comp. Laws § 600.715(1) and § 600.705(1), (2) caused any act to be done, or consequence to occur, in the state resulting in an action for tort, under Mich. Comp. Laws § 600.715(2) and § 600.705(2), or (3) entered into a contract for services to be performed or for materials to be furnished in the state by the defendant, under Mich. Comp. Laws. § 600.715 (5) and § 600.705(5).[2]

The Sixth Circuit Court of Appeals has declared that the transaction of even the "slightest act of business" in Michigan satisfies the first element of § 600.715. *Lanier v. Am. Bd. Of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988). In *Lanier*, the Sixth Circuit held that the forwarding of correspondence, the initiation of telephone calls to a Michigan entity, as well as the collection of money, are examples of transactions which would satisfy the "slightest act of business" standard in the State. *Id.* at 908.

It is also well established that "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. [A] substantial amount of

---

[2] The plain language of the "Long Arm" statutes requires a plaintiff to establish only one of the enumerated circumstances to confer personal jurisdiction on a defendant. Mich. Comp. Laws. §§ 600.705, 600.715 ("The existence of *any* of the following relationships. . . .") (emphasis added).

business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within the State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis added).

In this case, the Defendants have relied heavily upon their joint representations that neither Vekich nor any representative of Argo were ever physically present in Michigan. The Defendants further argue that the majority of the parties' agreement was to be performed in Europe - not in Michigan. These arguments must be rejected. North Pointe, a Michigan corporation, was a primary party to the November 3, 2006 "Memorandum of Understanding." Argo, through its representative Jamaluddin, continuously communicated with North Pointe via electronic mail at its office in Dearborn, Michigan. Many documents were faxed to and returned from North Pointe's office in Michigan. Vekich individually communicated with representatives of North Pointe. Jamaluddin repeatedly implored North Pointe to enlist Argo's services in obtaining a letter of credit. Furthermore, the "Memorandum of Understanding" required that money be sent from Michigan to Argo in Minnesota. It is also undisputed that North Pointe transferred the monies (to wit, $767,250.00) to Argo.

Relying upon the principles in *Lanier* and *Burger King*, it is clear from the record that Argo and Vekich - at the very least - conducted the "slightest act of business" in Michigan. *Lanier* 843 F.2d at 906. Thus, the Court determines that it may lawfully exercise personal jurisdiction over Argo and Vekich in this case.

IV.

The Court must now decide if the exercise of personal jurisdiction over these two Defendants "comports with the due process clause of the Fourteenth Amendment." *Fisher*, 325 F.Supp.2d 810, 815 (E.D. Mich. 2004). When determining issues relating to "specific" jurisdiction,

"a State exercises personal jurisdiction over the defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984).

In 1968, the Sixth Circuit established a three-part test to determine whether an exercise of "specific" jurisdiction is consistent with the Fourteenth Amendment:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)

The first part of this test to determine if either or both of these Defendants purposefully availed themselves of the privilege of acting in Michigan. The Sixth Circuit has explained that:

> If . . . a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to [a resident of the forum state], then the defendant has purposefully availed himself of the forum by creating a continuing obligation in [the forum state]. Furthermore, if the cause of action is for breach of that contract . . . then the cause of action naturally arises from the defendant's activities in [the forum state].

*Cole v. Mileti* 133 F.3d 433, 436 (6th Cir. 1998). If the Defendants in this case purposefully availed themselves of business opportunities in Michigan, it would be clear that they subjected themselves to the jurisdiction of this forum. *Lanier*, 843 F.2d at 910. Jurisdiction is proper if "the [Defendants'] contacts proximately result from [their actions] . . . that create a 'substantial connection' with the forum state," inasmuch as they should have reasonably anticipated facing a lawsuit there. *Burger King*, 471 U.S. at 475. These requirements ensure that neither Argo nor Vekich could be "hauled into a jurisdiction solely as a result of 'random,' fortuitous' or 'attenuated' contacts." *Id.*

The record in this case demonstrates that Argo transmitted multiple communications to North Pointe in Michigan. Additionally, there is evidence that Jamaluddin repeatedly urged North

Pointe to utilize Argo's services in obtaining a letter of credit. The "Service Agreement for Bank Instrument Arrangement" and the "Memorandum of Understanding" were negotiated and signed by North Pointe, a Michigan corporation. These two documents required Argo to provide future services (e.g., secure letter of credit, accept and relay funds, transport cement, etc.) and forward pertinent information relating to their agreement to North Pointe in Michigan.

Furthermore, North Pointe has alleged in this case that Argo is in breach of its contractual obligations. Thus, this cause of action naturally arises from the Defendants' activities in Michigan. *Cole*, 133 F.3d at 436. Finally, the Court finds Jamaluddin's statement that Argo "shall do [its] best to win [North Pointe's] confidence and as such look forward to do long term business with your company. . . ." to be revealing. Declaration of Mohamad Shukr, ex. 38. In the opinion of the Court, this statement evidences the intention of Argo to establish a "continuous and substantial" relationship with North Pointe in Michigan. *See Lanier* 843 F.2d at 911; *Calphalon Corp. v. Rowlette* 228 F.3d 718, 723 (6th Cir. 2000). There are no other facts that have been presented to the Court which challenge this conclusion. Thus and for the reasons which have been stated above, Argo has satisfied the requirements for purposeful availment, as interpreted by the Sixth Circuit.

However, the Court is not convinced that Vekich, while acting as an individual within the context of this case, has purposely availed himself of the privilege of acting in Michigan. "[T]he mere fact that the actions connecting [a defendant to the state was] undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over [him]." *Balance Dynamics Corp. v. Schmitt Industries, Inc*., 204 F.3d 683, 698 (6th Cir. 2000). However, the Sixth Circuit has held that a defendant, who has acted within his official capacity, must be "actively and personally" involved, and even in that instance, personal jurisdiction is still subject to the notions of fair play and substantial justice. *Id*.

In this case, Vekich's official and individual involvement appears to be extremely limited. North Pointe has only produced evidence of an isolated communication from Vekich to North Pointe, which appears to be merely a clarification or a retransmission of information from Jamaluddin. There is no evidence to suggest that Vekich was "actively and personally" involved in the solicitation or alleged deception of North Pointe. There is no indication that he has personally benefitted from Argo's relationship with North Pointe. Furthermore, according to his affidavit and without any evidence to the contrary, Vekich had no role in negotiating or executing the contracts that gave rise to this suit.

After assessing all of the documents that have been produced for the Court regarding Vekich's involvement, it is clear that his individual activity related to this claim is not substantial enough to satisfy the purposeful availment requirement of the Fourteenth Amendment. While the Court declines to determine whether Vekich's actions as a representative of Argo are blameless, it would be contrary to notions of fair play and substantial justice to require him to appear as a litigant in a federal court in Michigan under these circumstances. Consequently, the Court concludes that the exercise of specific jurisdiction over Vekich does not comport with the due process clause of the Fourteenth Amendment.

The Court now moves to the last part of the Fourteenth Amendment test; namely, an evaluation of "reasonableness." The Supreme Court in *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987), opined that "reasonableness" is to be determined by balancing "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Additionally, if minimum contacts have been established, the interests of the plaintiff will justify a large burden on the defendant. *Id.* at 105-6.

Since North Pointe is incorporated in Michigan, this State has a legitimate interest in

resolving the lawsuit. *See Asahi*, 480 U.S. at 106.  Here, Northpointe claims to have sustained significantly high damages, all of which have adversely affected its ability to conduct business in Michigan.  Moreover, there is no available evidence which would suggest that it would be overly burdensome for Argo, a Minnesota corporation, to travel to Michigan to litigate this dispute.  Consequently, the Court finds that it is reasonable to exercise specific jurisdiction over Argo.

V.

For the reasons stated above, Vekich's motion to dismiss North Pointe's complaint for lack of personal jurisdiction must be, and is, granted.  On the other hand, Argo's application for the dismissal of North Pointe's complaint for lack of personal jurisdiction must be, and is, denied.


IT IS SO ORDERED.


Dated:   July 3, 2007                                            s/ Julian Abele Cook, Jr.
         Detroit, Michigan                                       JULIAN ABELE COOK, JR.
                                                                 United States District Court Judge


Certificate of Service

I hereby certify that on July 3, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                                 s/ Kay Alford
                                                                 Courtroom Deputy Clerk