UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTH POINTE DEALINGS, INC.,

       Plaintiff,

                                    Case number 07-10298
v.                                  Honorable Julian Abele Cook, Jr.

ARGO INTERNATIONAL INC.,

       Defendant.

## ORDER

In this civil action, the Plaintiff, North Pointe Dealings, Inc. ("North Pointe"), has charged the Defendant, Argo International, Inc. ("Argo") with a breach of their contract, as well as the commission of unlawful acts of statutory and common law conversion.

On July 18, 2007, Argo filed a motion to compel arbitration and dismiss the case. The motion was referred to Magistrate Judge Donald Scheer for his consideration on July 24, 2007. On October 29, 2007, Magistrate Judge Scheer submitted a report, in which he recommended that the Court deny Argo's motion. No objections to his report have been filed by either party as of this date. Accordingly, and for the reasons that have been stated below, the Court will, and does, (1) adopt Magistrate Judge Scheer's report, and (2) deny Argo's motion to compel arbitration and dismiss the case.

I.

North Pointe is a Michigan corporation that, in part, exports cement to foreign countries. Argo is a Minnesota based business consulting firm which serves as a consultant to those businesses that are involved in international trade, and assists its clients in arranging contracts

relating to urea (fertilizer), cement, rice, sugar, iron rods, and other products.

During the summer of 2006, North Pointe recruited Argo to find a cement supplier, facilitate a transaction, and arrange for the delivery of cement to the port of Um Qasr in Iraq. Argo negotiated an agreement for North Pointe to purchase of 12500 metric tons of cement from Century Cement Company Limited ("Century Cement"). Argo was not a party to this agreement, which was signed on August 31, 2006. Their contract contained a clause which stated that, if the parties were unable to resolve any dispute, "such dispute shall be settled by following the arbitration procedures of English law or by the United States of America." (Pl.'s Ex. A at 10.) Moreover, the contract provided that "[s]uch arbitration shall be binding on both the buyer and the seller." (Pl.'s Ex. A at 10.) These parties also agreed that North Pointe would post a letter of credit in favor of Century Cement for 99% of the purchase price (i.e., $767,250.00). However, North Pointe's efforts to obtain such a letter of credit from an American bank were unsuccessful.

Thereafter, North Pointe and Argo entered into a written contract on September 28, 2006 ("Service Agreement for Bank Instrument Arrangement") which authorized Argo to arrange for a letter of credit in the amount of $767,250.00. The service agreement contained the following arbitration clause:

> The parties hereby agree to settle any dispute arising from or relating to this agreement amicably. IF settlement is not reached, the dispute in question shall be submitted for arbitration in FRANCE at the PARIS CHAMBER OF COMMERCE. The findings of the court of arbitration shall be considered as final, irrevocable and binding upon both parties.

(Pl.'s Ex. B at 3.)

After the letter of credit had been obtained, these two parties entered into another agreement ("Memorandum of Understanding") on November 3, 2006 which contained a provision that required North Pointe to pay the sum of $767,250.00 to Argo to cover the letter of credit. In turn, Argo agreed to (1) use these monies to pay Century Cement for the supplies, and (2) make the

necessary arrangements for the handling of the cargo, its transportation to Iraq, and to settle all shipment costs. They also agreed that, in the absence of any unforeseeable circumstances, Argo would refund these monies to North Pointe if the cement was not delivered to Century Cement by November 27, 2006. In addition, this Memorandum of Understanding required Argo to keep North Pointe advised of the progress of the transaction. The final paragraph of their agreement provided that "[t]his Memorandum of Understanding shall be part and parcel of the Cement Contract. . . . If any dispute or disagreement arises out of this MOU or the Contract, this Memorandum of Understanding and its Terms shall prevail over the Contract." (Pl.'s Ex. C at 2). Significantly, this Memorandum of Understanding did not contain any arbitration clause.

The shipment of cement was never delivered. On November 25, 2006, Argo issued a "Notice of Force Majeure," in which it claimed that the wartime conditions in Iraq had prevented it from being able to deliver the cement, a situation which allegedly relieved it of any liability to North Pointe. When the parties' efforts to resolve this dispute failed, this lawsuit followed.

In its complaint to this Court, North Pointe contends that Argo (1) violated several terms of the parties' Memorandum of Understanding, (2) failed to make successful arrangements for the handling and delivery of the cement, and to provide it with pertinent documentation relating to the transaction, (3) refused to return the $767,250.00 when the cement remained undelivered, (4) breached its contractual obligations, and (5) committed unlawful acts of statutory and common law conversion.

II.

Argo maintains that an order which would compel an arbitration of the issues within the complaint is warranted under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the Mich. Comp.

3

Laws §§ 600.5001 *et seq.* The Federal Arbitration Act states, in pertinent part, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2.

The question of whether an issue is arbitrable under a contract of arbitration is a legal question for the court rather than for an arbitrator. *International Union v. Benton Harbor Malleable Indus.*, 242 F.2d 536 (6th Cir. 1957). In evaluating a motion to stay or dismiss the proceedings in favor of arbitration, a court must first seek to determine if an agreement to arbitrate exists, and then decide whether the dispute between the parties falls within the scope of the matters that they agreed to arbitrate. *Prima Paint Corp. v. Flood and Conklin Mfg. Co*, 388 U.S. 395 (1967).

Argo contends that "the MOU expressly adopts the terms of the Cement Contract. . . ." (Def.'s Br. at 14.) Contrary to Argo's position on this issue, there is no evidence to support this contention. Rather, the Memorandum of Understanding merely states that it is "part and parcel of the Cement Contract." (Pl.'s Ex. C at 2.) There are no words within this document whose plain meaning could be reasonably interpreted to represent an intent by the parties to incorporate the cement contract into the Memorandum of Understanding. The circumstances which surround the execution of this document suggest otherwise; namely, that it was the parties' intent to incorporate the Memorandum of Understanding into the cement contract – not vice versa. Furthermore, it is beyond dispute that the Memorandum of Understanding does not contain any arbitration clause. While it makes reference to the cement contract, there is also language which specifically provides that the terms of the Memorandum of Understanding "shall prevail over the contract." (Pl.'s Ex. C at 2.)

III.

As a result of its review of the official record in this case, the Court is satisfied that Argo has failed to establish that the cement contract was incorporated into the Memorandum of Understanding. Therefore, the Court concludes that there is no agreement between the parties to arbitrate. Hence, and for the reasons that have been stated above, the Court will, and does, (1) adopt the recommendation of Magistrate Judge Scheer, and (2) deny Argo's motion to compel arbitration and dismiss the case.

IT IS SO ORDERED.

Dated: January 23, 2008  
    Detroit, Michigan

s/ Julian Abele Cook, Jr.  
JULIAN ABELE COOK, JR.  
United States District Court Judge

Certificate of Service

I hereby certify that on January 23, 2008, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

s/ Kay Alford  
Courtroom Deputy Clerk